

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-26-2008

# Marinescu v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2797

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Marinescu v. Atty Gen USA" (2008). *2008 Decisions.* Paper 978.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/978

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>NOT PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-2797
_____


ROBERT MARINESCU,
                              Petitioner
                        v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent


_____


Petition for Review of an Order of the
Board of Immigration Appeals
(No. A70-359-595)
Immigration Judge: Walt Durling

_____


ARGUED JUNE 14, 2007


Before: McKEE, STAPLETON, and NYGAARD, <u>Circuit</u> <u>Judges</u>.


(Filed: June 26, 2008)


Anthony R. Holtzman, Esq. (Argued)
David R. Fine, Esq.
Kirkpatrick & Lockhart Preston Gates Ellis
17 North Second Street, 18th Floor
Harrisburg, PA 17101
               <u>Counsel for Petitioner</u>


Mary C. Frye, Esq. (Argued)

Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
                Counsel for Respondent

_____

OPINION OF THE COURT
_____

NYGAARD, <u>Circuit</u> <u>Judge</u>.

This petition for review comes to us following the Board of Immigration Appeals'

reversal of the Immigration Judge's order to withhold removal of petitioner Robert

Marinescu to Romania in accord with INA §241(b)(3). For the reasons detailed below,

we will grant Mr. Marinescu's petition and remand to the Board for further consideration

consistent with our holding.


I.

Mr. Marinescu is a citizen of Romania who was admitted to the United States as a

lawful permanent resident. He was later placed into removal proceedings by issuance of a

Notice to Appear, listing three criminal convictions dating from 1994 to 1997, making

him ineligible for discretionary relief. Marinescu expressed fear of returning to Romania.

Marinescu and his father testified in support of his application for withholding of

removal pursuant to section 241(b)(3) and pursuant to Article 3 of the U.N. Convention

Against Torture. Mr. Marinescu and his family are of the Roma ("gypsy") ethnic group.

2

The testimony offered by Marinescu focused upon the consequences of ethnic animus against Roma that he will face if he was returned to Romania. These consequences included death threats.

The Immigration Judge told Marinescu that the testimony did not support either a finding of past persecution or a finding of future persecution. At Marinescu's request, however, the court permitted him to augment the record with further evidence. Reconvening three months later, Marinescu proffered Ian Hancock, Ph.D. The Judge accepted Dr. Hancock as an expert witness who testified specifically about the living conditions of Roma in Romania.

The Immigration Judge credited the expert's testimony, and found the following: approximately 95% of the Roma population in all areas of the country live with an overt fear of violence; Roma are regularly targeted for violent reprisals and discrimination from fellow citizens and police throughout Romanian society; police routinely fail to intervene to stop instances of "mob rule;" and, the police themselves often treat Roma brutally. The Judge also credited Amnesty International reports that document ethnically based police violence against Roma who are incarcerated.

Regarding Marinescu's plight, the Judge found that, by virtue of his physical appearance, accent and surname, he will be readily identified as Roma by other Romanians and the police. This makes it likely that Marinescu, as is the case with the vast majority of Roma, will be subject to routine violence without police protection, as

3

well as substantial discrimination in education, housing, medical care, employment and social services.

Looking to the future, the Judge also found that government efforts directed at improving the life of Roma is a facade to cover long-standing societal and governmental ethnic animus. These programs have been "documented failures." The Judge found that conditions for the Roma in Romania have grown worse since the fall of Communism.

Marinescu's expert was confronted with the Country Report, which contradicted the expert's testimony on the sincerity and success of the government's efforts. The Judge credited the expert's testimony that the State Department has consistently failed to understand the realities of the discrimination and violence suffered by Roma, and has routinely ignored data that he has provided to them. The Immigration Judge deemed the Country Report to be unreliable in its description of Roma life in Romania.

From these factual findings the Immigration Judge concluded that "the unrebutted evidence in this record points to such a high degree of discrimination and violence that the court is satisfied that persecution has been established by respondent on account of race or ethnicity as a Roma." Moreover, the Judge concluded that Marinescu met his burden of proof to establish a clear probability that he will be persecuted if returned to Romania.

In addressing relief sought under the Convention Against Torture Act, the Immigration Judge concluded that Marinescu was likely to be detained upon his return.

He also determined that such detention would probably subject him to physical attacks by police. The Judge said "it is more likely than not that respondent will suffer torture upon his return." Nonetheless, the Judge did not rule on this claim, stating that it "need not be addressed" because Marinescu had met his burden to be eligible for other relief.

The government appealed the Immigration Judge's findings. The Board of Immigration Appeals reversed the Immigration Judge's decision. On the living conditions of Roma, the Board said:

> The evidence shows both that considerable inequities in access to housing, lucrative employment opportunities, and social services remain, and that cases of unjustified police violence against Roma continue to be reported.

With regard to government efforts to improve the life of Roma, the Board stated:

> We note that the evidence tends to show that the Romanian government, while working toward admission into the European Union is committed to effecting its anti-discrimination framework for improving the situation of the Roma in law, police and practice.

Upon these findings, the Board concluded that Marinescu did not meet his burden of proving eligibility for withholding of removal.

With regard to relief under the Convention Against Torture, the Board found that the Immigration Judge incorrectly overlooked the cross examination of Marinescu's expert, which revealed that he was speculating when he stated that Marinescu would be detained and tortured upon his return. While recognizing that the Immigration Judge refrained from adjudicating this issue, the Board viewed the speculative nature of the

5

expert's opinion on this topic as insufficient to support relief under the Convention. The Board formally denied relief to Marinescu under the Convention.

II.

The Board reversed the Immigration Judge's decision, declaring that Marinescu "has not met his burden of proving eligibility for withholding of removal." This determination is subject to our review for substantial evidence. Yet, Marinescu challenges the Board's decision on a different ground. He petitioned us to review whether the Board's decision conforms to the following regulation.

> The Board will not engage in de novo review of findings of fact determined by an immigration judge. Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous.

8 C.F.R. §1003.1(d)(3)(i).

Marinescu argues that the Board's decision to deny him withholding of removal is improper because it failed to identify how, if at all, the Immigration Judge's factual findings were clearly erroneous.[1] We agree. We find two aspects of the Board's decision to be problematic.

---

[1] We understand the clearly erroneous standard in this instance to mean that the Immigration Judge's decision is reversible only in situations in which "any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B); *Jishiashvili v. Attorney General of the U.S.,* 402 F.3d 386, 392 (3d Cir. 2005).

First, without any specific reference to the record, the Board set aside the Immigration Judge's factual finding that the Romanian government's supposed efforts to quell anti-Roma discrimination and violence were documented failures and a sham. The Board concluded exactly the opposite: that the Romanian government is working effectively to fight ethnic discrimination and violence against Roma. The Board's decision did not contain any discussion of specifically why it reached the opposite conclusion. Further, the Board did not provide any declaration or discussion of clear error by the Judge.

Moreover, we deduce that the Board must have set aside the Immigration Judge's credibility determinations to reach its conclusion about the progress and impact of governmental programs. We surmise this because the Board's finding that the government is successfully advancing its anti-discrimination programs both contradicts evidence found credible by the Judge and agrees with evidence that the Judge ruled was unreliable. The Board, however, did not make any effort to justify its finding. Significantly, it did not reference any specific clear error in the Judge's credibility determination.

The second problem that we identify in the Board's decision is that it describes the discrimination of Roma in terms substantially different from the Immigration Judge. The Judge found that 95% of Roma in Romania live in an "overt fear of violence," and that "substantial" discrimination exists in education, housing, medical care, employment and

7

social services. In contrast, the Board refers only to "cases of unjustified violence" and to "considerable inequities" in access to housing, social services, and "lucrative" employment. The terms and qualifiers expressed by the Board result in subtle but significant differences from the findings of the Immigration Judge.

The Immigration Judge granted relief to Marinescu because he found that anti-Roma discrimination and violence were so pervasive and severe that it constituted a likelihood of future persecution. The Board's decision disagrees not just with the Judge's legal judgment, but also with the factual premise for his judgment. This is the crux of general problem that we have with the Board's decision.

The Board is obligated to accept the factual findings of the Immigration Judge except where a reasonable judge would be compelled to conclude to the contrary. 8 U.S.C. § 1252(b)(4)(B); *Jishiashvili,* 402 F.3d at 392. Where the Board substitutes its own interpretation of the facts for those of the Immigration Judge, the Board is engaging in quintessential de novo review. The regulations expressly prohibit this.

Here, the Board clearly had a view of the "facts on the ground" in Romania that differed from that of the Immigration Judge. When the factual premises of the two decisions are compared, it is clear that the Board summarily described the plight of Roma in terms portraying the discrimination faced by Roma as less dire and pervasive. The Board also forecasted a brighter future for Roma, based on its positive perception of government efforts. For this reason, we must distinguish this case from those in which

the Board acts squarely within its discretion to judge the sufficiency of evidence to prove the likelihood of future persecution. Here, the Board fundamentally altered the factual findings that supported the Immigration Judge's grant of withholding of removal. In so doing, the Board exceeded the scope of its authority by conducting a de novo review of the Immigration Judge's decision.

Finally, regarding relief under the Convention Against Torture, the Board incorrectly "reversed" the Immigration Judge's conclusion that Marinescu would, more likely than not, be subjected to torture. There was no conclusion to reverse. While the Immigration Judge commented upon evidence relevant to this claim, he explicitly refrained from ruling upon this relief. Although we disfavor comments such as those made by the Immigration Judge that unnecessarily confuse the line between dicta and decision, the Board nonetheless exceeded its authority by ruling on a claim for which a final order of the Immigration Judge simply did not exist. 8 C.F.R. §1003.1(b).

## III.

For the reasons stated above we grant the petition for review and remand the cause to the Board of Immigration Appeals for further consideration consistent with this Opinion.

STAPLETON, J., *dissenting:*

I conclude that what separated the IJ and the BIA here was not a dispute about "findings of fact" as that phrase is used in 8 C.F.R. § 1003.1(d)(3) and, further, that the administrative system could not work as intended if the BIA applied the "findings of fact" provisions of that regulation to this type of dispute.

Sections 1003.1(d)(3)(i), (ii), and (iv), provide in part as follows:

(I) Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous.

(ii) The Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges de novo.

\* \* \*

(iv) Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in factfinding in the course of deciding appeals.

Marinescu was able to offer no evidence that he had personally been persecuted in the past. The IJ told him this at the end of the first hearing and suggested that he get an expert. What Marinescu wound up with was a pattern and practice case based solely on one expert's testimony. The IJ, based on that testimony and a definition of "persecution" from a U.N. handbook, concluded that Marinescu had shown it "a clear probability" (i.e., more likely than not) that he would be persecuted if returned.

The BIA concluded:

10

. . . that the objective evidence of record is insufficient to show that the respondent faces a clear probability of harm that would rise to the level of persecution. Although the evidence shows that the longstanding discrimination against the Romani community continues to be widespread in practice, the evidence does not support a finding that the respondent faces a clear probability of suffering legal, economic, and/or social marginalization and abuse, such that his life or freedom would be threatened. The evidence shows both that considerable inequities in access to housing lucrative employment opportunities, and social services remain, and the cases of unjustified police violence against Romani continue to be reported. However, unlike the Immigration Judge, we do not find that the evidence showing the current, unjust treatment of the Romani community, individually or cumulatively, rises to the level of a clear probability of persecution. Further, we note that the evidence tends to show that the Romanian government, while working toward admission into the European Union, is committed to effecting its antidiscrimination framework for improving the situation of the Romani in law, policy, and practice. We therefore find that the respondent has not met his burden of proving eligibility for withholding of removal, and we will reverse the Immigration Judge's grant of relief from removal.

App. at 21a-22a (citations omitted).

The BIA appears to have resolved two issues here: (1) whether the testimony of Marinescu's expert and the reports tendered by the government showed a pattern and practice of "persecution" as that term is used in the INA (i.e., "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom," *Lie*, 496 F.3d at 536); and (2) whether the evidence as a whole indicated a sufficient degree of risk (i.e., more likely than not) that Marinescu would be persecuted in the future. The BIA's conclusion in favor of the INS on both of these issues does not, I believe, constitute "factfinding" within the meaning of § 1003.1(d)(3). Indeed, this is the very kind of decision

11

making the BIA frequently does and should do, but we know from subsection (iv) of the regulation that "the Board will not engage in factfinding in the course of deciding appeals."

The BIA did not question the credibility of Marinescu's expert witness. It took his testimony at face value and evaluated and weighed it in the context of the cross-examination and the other expert evidence based on the applicable legal standard. Arguably, perhaps, the BIA rejected a factual finding of the IJ that the acknowledged commitment of the Romanian government to equal rights for Romanians is largely ineffective. However, I do not read the BIA's "furthermore, we note" comment as rejecting the IJ's finding regarding ineffectiveness. All it says is that the Romanian government, while working toward admission into the European Union, is trying to make things better. Moreover, I don't regard this as crucial to the BIA's conclusion concerning the non-existence of a "clear probability of persecution." App. at 22a.

I would deny the petition.